STATE OF WEST VIRGINIA

FILED
April 6, 2020
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **H.N., T.D. Jr., A.D., L.D., H.C., K.C., D.C., H.B.-1, and H.B.-2**

**No. 19-0799** (Nicholas County 18-JA-115, 18-JA-116, 18-JA-117, 18-JA-118, 18-JA-119, 18-JA-120, 18-JA-121, 18-JA-122, and 18-JA-123)

## MEMORANDUM DECISION

Petitioner Mother M.B., by counsel John C. Anderson II, appeals the Circuit Court of Braxton County's August 5, 2019, order terminating her parental and custodial rights to H.N., T.D. Jr., A.D., L.D., H.C., K.C., D.C., H.B.-1, and H.B.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Allison R. Taylor, filed a response on behalf of the children in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in adjudicating her upon additional allegations at the dispositional hearing and in finding that there was no reasonable likelihood she could substantially correct the conditions of abuse and neglect in the near future.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2018, the DHHR filed an abuse and neglect petition that alleged child H.C. disclosed to the DHHR that she was sexually abused by three people in her home, including her step-father. Upon visiting the home, the DHHR discovered that it had no running water, was

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, we will refer to them as H.B.-1 and H.B.-2, respectively, throughout this memorandum decision. Finally, we note that petitioner's counsel filed the appellate brief in this matter in accordance with Rule 10(c)(10)(b) of the Rules of Appellate Procedure.

"infested with fleas and mice," contained animal feces, and had no food. The DHHR additionally indicated that the children all suffered from lice. The DHHR also discovered that two registered sex offenders frequented the home. Lastly, the DHHR alleged that petitioner and her husband engaged in domestic violence in the home in the children's presence. According to the petition, the DHHR had previously provided petitioner with multiple services, including parenting and adult life skills education and a psychological evaluation. Based on these conditions, the DHHR asserted that petitioner subjected the children to abuse and neglect.

During an adjudicatory hearing in October of 2018, petitioner admitted to the petition's allegations regarding the conditions in the home and to having tested positive for methamphetamine during a drug screen. The circuit court accepted petitioner's stipulation and adjudicated her of abusing and neglecting the children. During the hearing, the circuit court also ordered that child H.C. undergo a psychological evaluation. Petitioner thereafter moved for an improvement period, but her motion was denied.

The circuit court then held a series of dispositional hearings, the last of which occurred in April of 2019. During the hearings, the DHHR presented evidence of petitioner's failure to remedy the conditions in the home, including a report from a DHHR employee who inspected the home several months after the petition's filing and found that it was "still not cleaned or maintained" and "still had the presence of animal feces and trash throughout." Additionally, the circuit court considered evidence obtained through H.C.'s psychological evaluation, in which the child disclosed "that the children had to shoplift at a nearby store in order to obtain food." The circuit court also made findings regarding petitioner's history of drug abuse, including allegations that petitioner manufactured methamphetamine in her home in 2003 and that the children had been removed from the home in 2014 due to her substance abuse. According to the circuit court, petitioner admitted during her testimony that she allowed "drug users in the home in exchange for drugs for herself, and that they smoked methamphetamine in the home while the [children] were present." Additionally, the circuit court recognized that petitioner submitted to substance abuse treatment, but also found that she delayed seeking treatment for approximately four months during the proceedings and, according to testimony from a representative of her treatment program, would not be able to complete her treatment for "a matter of months." The circuit court further found that petitioner's "behaviors . . . have not changed since the filing of the first [Child Protective Services] case . . . in 2014." Based on the evidence, the circuit court specifically found that, as of the final dispositional hearing, petitioner did "not have safe and suitable housing" for the children.

Relevant to petitioner's assignments of error on appeal, the circuit court also considered evidence surrounding allegations upon which petitioner was not adjudicated, including evidence of H.C.'s statements during her psychological evaluation. According to the circuit court, H.C. disclosed that "she had sexual intercourse with . . . [her step-father] in the presence of . . . [petitioner] and that she informed [petitioner] that [her step-father] had sexually abused her, after which . . . [petitioner] told her not to tell anyone." As such, the circuit court found that there was "credible evidence" that H.C.'s step-father sexually abused her and that petitioner was aware of the abuse and failed to protect the child. The circuit court made further findings regarding petitioner allowing a registered sex offender to have access to the children and her participation in domestic violence in the children's presence.

Ultimately, the circuit court found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future and that the children's welfare required termination of her parental and custodial rights. The circuit court terminated petitioner's parental and custodial rights to the children.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Petitioner first argues that the circuit court erred in taking additional evidence regarding the allegations contained in the petition at the dispositional hearing and, essentially, adjudicating her on those allegations after the close of the adjudicatory hearing. According to petitioner, she was properly adjudicated only upon the conditions in the home and her substance abuse, so any evidence regarding domestic violence, the sexual abuse of H.C., or petitioner's knowledge of such sexual abuse was irrelevant to disposition and the circuit court was precluded from making findings that such conduct occurred or that it constituted abuse or neglect of the children. Because the circuit court considered this additional evidence and made findings regarding petitioner's conduct without prior notice, she argues that the procedural safeguards provided by the Rules of Procedure for Child Abuse and Neglect Proceedings and applicable statutes governing such

---

[2]According to respondents, the parental rights of every parent have been terminated in relation to every child, either in the underlying or prior proceedings. Respondents further indicate that A.D. and H.B.-2 currently reside in the same foster home with a permanency plan of adoption therein; D.C. and K.C. reside in the same foster home with a permanency plan of adoption therein; and T.D. Jr. and L.D. reside in the same foster home with a permanency plan of adoption therein. Respondents assert that H.B.-1 and H.N. are placed in a residential facility because the DHHR has had difficulty identifying a foster home for the children. However, the guardian asserts that the current plan is to transition H.B.-1 into the home of her maternal grandmother. Finally, respondents indicate that H.C. has been placed at a residential facility due to behavioral issues resulting from her sexual abuse and that the permanency plan for this child will be placement with her paternal grandmother.

proceedings were violated. Upon our review, however, we find that petitioner is entitled to no relief.

Petitioner fails to recognize that the circuit court based its termination of her parental and custodial rights upon several factors directly related to the issues of abuse and neglect for which she acknowledges she was properly adjudicated. Specifically, the circuit court heard evidence at disposition that petitioner had not corrected either of the issues for which she was adjudicated—the unsuitable conditions in the home and her substance abuse. The DHHR presented evidence that it witnessed the persistent unsuitable conditions in the home, including the continued presence of animal feces and trash throughout. Further, petitioner admitted to her use of methamphetamine in the children's presence. Although the evidence established that petitioner had enrolled in substance abuse treatment by the time of the dispositional hearing, the circuit court found that she delayed this treatment by approximately four months and that a representative of her treatment program indicated that petitioner would not be able to complete treatment for several months. Accordingly, the circuit court found that petitioner did "not have safe and suitable housing" for the children as of the dispositional hearing. Regardless of the additional findings the circuit court made in regard to the allegations of sexual abuse and domestic violence in the home, the record is clear that the circuit court properly based termination upon petitioner's failure to remedy the conditions of abuse and neglect upon which she was properly adjudicated. Thus, we find that petitioner is entitled to no relief in regard to her first assignment of error.

Finally, petitioner argues that the circuit court erred in finding that there was no reasonable likelihood she could substantially correct the conditions of abuse and neglect in the near future. According to petitioner, she "remedied nearly every condition of abuse and neglect for which she was adjudicated" by the time of the dispositional hearing, as evidenced by her participation in substance abuse treatment, her extended period of negative drug screens, and her gainful employment. However, we initially note that the issues for which petitioner was adjudicated were in no way connected to a lack of employment. Specifically, the conditions of petitioner's home were not predicated on her unemployment or lack of financial means. Rather, they were predicated on her refusal to maintain the home in a fashion suitable for the children to reside in, including her failure to remove animal feces and refuse from the home. Additionally, petitioner provides no argument as to how employment would remedy her inability to maintain the home in a suitable condition or curb her substance abuse, which the circuit court found had persisted for approximately seventeen years and resulted in a prior removal of the children from petitioner's home. Notwithstanding petitioner's steps to address her substance abuse issues, we find that the evidence supports the circuit court's finding that there was no reasonable likelihood petitioner could correct the conditions of abuse and neglect in the near future. According to West Virginia Code § 49-4-604(c), "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that . . . the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." In short, the circuit court weighed petitioner's limited participation in substance abuse treatment against her lengthy history of substance abuse and its impact on the children in finding that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future. Also important to this finding was the testimony that petitioner would not be able to complete such treatment for several months and that such completion was based on speculation.

As this Court has routinely held,

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Here, the Court not only found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future, but it also found that the children's welfare necessitated termination of petitioner's parental and custodial rights. This finding was based on several factors, including "the children's need for continuity of care and caretakers" and the amount of time necessary to integrate them into "a stable and permanent home environment." According to West Virginia Code § 49-4-604(b)(6), circuit courts are permitted to terminate parental and custodial rights upon these findings. While petitioner argues that the circuit court should have imposed a less-restrictive dispositional alternative, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, it is clear that the circuit court did not err in terminating petitioner's parental and custodial rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 5, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: April 6, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison